UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL J. VAN STEENBURG, | § | No. SA:14–CV–976–DAE |
| VS TECHNOLOGY, INC., and | § | |
| VEOLECTRA, INC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| ROBERT HAGEMAN and | § | |
| RADIANT SOLUTIONS, INC., | § | |
| | § | |
| Defendants. | § | |

ORDER (1) DENYING PLAINTIFFS' MOTION TO REMAND AND
(2) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST
AMENDED COMPLAINT

Before the Court are a Motion to Remand (Dkt. # 15) and a Motion

for Leave to File First Amended Complaint (Dkt. # 25) filed by Plaintiffs Michael

Van Steenburg, VS Technology, Inc., and Veolectra, Inc. (collectively,

"Plaintiffs").  On March 26, 2015, the Court heard oral argument on the Motions.

Alan K. Taggart, Esq., appeared at the hearing on behalf of Plaintiffs; Charles J.

Rogers, Esq. and Darlene Ghavimi, Esq., appeared at the hearing on behalf of

Defendants Robert Hageman and Radiant Solutions, Inc. (collectively,

"Defendants").  After reviewing the Motion and the supporting and opposing

memoranda, and considering the parties' arguments at the hearing, the Court

1

**DENIES** Plaintiffs' Motion to Remand (Dkt. # 15) and **GRANTS** Plaintiffs'

Motion for Leave to File First Amended Complaint (Dkt. # 25).

<u>BACKGROUND</u>

I.    <u>Factual Background</u>

The version of facts stated in Plaintiffs' Original Petition (Dkt. # 1,

Ex. A) differs dramatically from the version offered by Defendants in their

Amended Answer and Counterclaim (<u>Id.</u>, Ex. C).  According to Plaintiffs, in

November 2013, Defendant Robert Hageman ("Hageman") offered to let Plaintiff

Michael Van Steenburg ("Van Steenburg") use the business premises located at

19942 FM 2252, Garden Ridge, Texas ("the Premises") for Van Steenburg's own

purposes.  (<u>Id.</u>, Ex. A at 3.)  Plaintiffs claim that this offer was "unconditional,"

and at no time did Defendants make any request or demand for rent.  (<u>Id.</u> at 3, 5.)

Plaintiffs state that on or about July 15, 2014, Van Steenburg and

Hageman got into an argument, after which Hageman and Radiant "improperly

restricted Plaintiffs' access to the business premises."  (<u>Id.</u> at 4.)  Plaintiffs claim

that Hageman stated his intent to "convert to his own use" all of the property

located in the "warehouse" and the Premises.  (<u>Id.</u>)  Plaintiffs state that all of the

property at the Premises belongs to Van Steenberg, VS Technology, "or others."

(<u>Id.</u>)  Plaintiffs further state that the property at the Premises includes important

information and works in progress, which is critical to VS Technology's business

2

and existence, and that the property represents thousands of hours of work which cannot be duplicated or properly valued.  (Id. at 4–5.)

Defendants offer a different version of the facts, claiming that in late 2013, Van Steenburg promised Hageman that, if Hageman provided him with financial support, Van Steenburg would develop a switched reluctance electric controller and motor, different from previous design attempts, which they could jointly market and profit from.  (Dkt. # 1, Ex. C ¶ 35.)  According to Defendants, this venture was always intended to be separate and distinct from a similar venture the two men had been involved in as part of VS Technology.  (Id.)  As part of this venture, Defendants state that Hageman agreed to provide financing for the development work, including renting the Premises as a work space.  (Id.  ¶ 36–37.)

On November 8, 2013, Defendants allege that Van Steenburg forwarded to Hageman a long e-mail chain of correspondence between Van Steenburg and Third Party Defendant Ruhrpumpen, Inc. ("RPI") in which RPI expressed interest in hiring Van Steenburg to manufacture electric motors.  (Id. ¶ 45.)  According to the e-mails, Van Steenburg met with RPI, signed a non-disclosure agreement and was proceeding towards developing a product for RPI in secret.  (Id.)  Upon receiving the e-mail chain, Hageman reminded Van Steenburg that their project was to be kept secret and told Van Steenburg to stop communicating with RPI immediately.  (Id. ¶ 46.)  Defendants claim that Van

3

Steenburg agreed, but that they later learned Van Steenburg did not in fact cut off communication with RPI.  (Id.)

On May 16, 2014, a provisional patent application (Application Serial No. 61/994,151) was filed with the United States Patent and Trademark Office for the switched reluctance technology.  (Id. ¶ 38.)  The application, titled "Electric Motor and Related Methods," listed Van Steenburg as the sole inventor.  (Id. ¶ 43.) Defendants claim that Van Steenburg was obligated to assign his ownership in the provisional patent application to Veolectra, the corporation Hageman created in order to better attract potential investors.  (Id. ¶¶ 39, 44.)  Hageman, Van Steenburg, and David Mothersole (another engineer hired to assist with the project) were Veolectra's directors.  (Id. ¶ 39.)  According to Defendants, this duty stems both from Van Steenburg's agreement with Hageman and his fiduciary duties to Veolectra.  (Id. ¶ 44.)  Defendants claim that Van Steenburg has repeatedly refused to sign the assignment, claiming that he owns the invention rights.  (Id.)

On July 16, 2014, Defendants state that Hageman learned that RPI had hired Van Steenburg to work in Mexico to develop the technology that Van Steenburg had previously agreed to develop for Hageman and Veolectra.  (Id. ¶ 47.)  Hageman then informed Van Steenburg that his financial assistance would be terminated, that Van Steenburg no longer had access to the Premises, and that a

board meeting had been called to dissolve Veolectra.  (Id.)  Defendants allege that Hageman gave Van Steenburg the opportunity to collect his belongings from the Premises.  (Id. ¶ 48.)  On July 23, 2014, a quorum of Veolectra's directors voted to dissolve the corporation.  (Id. ¶ 51.)  A quorum of directors also voted that all company assets would be delivered to Hageman, including "electric drive motor patent . . . plans for such invention, software, computers, circuit boards, drawings, schemes, controllers, and all items used by Veolectra to develop said electric motor technology."  (Id. ¶ 52.)  All three directors, including Van Steenberg, were present at that meeting.  (Id. ¶ 49.)

Defendants claim that pursuant to this vote, all computers, electronics, mechanical equipment, and other items on the Premises used to develop the switched reluctance motor project are Veolectra's property.  (Id. ¶ 53.)  Likewise, Defendants claim that all intellectual property created by Van Steenburg and the other engineers while working on the switched reluctance motor project, including copyrightable material, is the property of "Veolectra, now Robert Hageman," and that Veolectra owns all copyrights in the copyrightable material.  (Id. ¶ 54.)

II.   Procedural Background

On July 25, 2014, Plaintiffs filed their Original Petition in the 207th Judicial District Court in Comal County, Texas.  (Dkt. # 1, Ex. A.)  Plaintiffs' Petition includes claims for breach of contract and conversion and a request for

5

incidental and consequential damages.  (Id. ¶¶ 8–10.)  The Petition also included a request for an ex parte temporary restraining order and temporary injunction.  (Id. ¶ 16.)  On October 27, 2014, Defendants filed their Original Answer, Affirmative Defenses, Special Exceptions, Counterclaim, and Third Party Petition to Plaintiffs' Original Petition.  (Dkt. # 1, Ex. B.)  Defendants' state law counterclaims included misappropriation of trade secrets, conspiracy to misappropriate trade secrets, breach of contract, fraud, and fraud in a real estate transaction.  Defendants also requested a declaratory judgment of intellectual property ownership.  (Id.)  On November 4, 2014, Defendants filed their First Amended Answer Affirmative Defenses, Special Exceptions, Amended Counterclaim, and Third Party Petition to Plaintiffs' Original Petition.  (Dkt. # 1, Ex. C.)  Defendants' amended counterclaim included a claim for copyright infringement under 17 U.S.C. § 501.  (Id. ¶¶ 65–70.)

On the same day, Defendants filed their Notice of Removal to the United States District Court for the Western District of Texas, San Antonio Division.  (Dkt. # 1.)  On December 3, 2014, Plaintiffs filed a Motion to Remand. (Dkt. # 13.)  On December 15, 2014, Defendants filed a Response in Opposition to Plaintiffs' Motion to Remand.  (Dkt. # 19.)  On January 2, 2015, Plaintiffs filed a Motion for Leave to File First Amended Complaint and Answer.  (Dkt. # 25.)  On January 12, 2015, Defendants filed a Response in Opposition.  (Dkt. # 26.)

LEGAL STANDARD

I.    Motion to Remand

A defendant may remove to federal court any civil action brought in state court over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a); Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 397 (5th Cir. 2013).  Original jurisdiction may be based on either diversity of citizenship or the existence of a federal question.  Halmekangas v. State Farm Fire and Cas. Co., 603 F.3d 290, 295 (5th Cir. 2010).  On a motion to remand, the removing party bears the burden of establishing that one of these bases of jurisdiction exists.  Shearer v. Sw. Serv. Life Ins. Co., 516 F.3d 276, 278 (5th Cir. 2008).

Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties—in other words, every plaintiff must be diverse from every defendant. 28 U.S.C. § 1332(a); Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

The presence or absence of a federal question necessary to support removal is governed by the well-pleaded complaint rule, under which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc., 482 U.S. at 392–93.  The well-pleaded complaint rule recognizes that the plaintiff is the "master of the

claim," and a plaintiff may—except in cases of complete federal preemption—
"avoid federal jurisdiction by exclusive reliance on state law." Id.  To support
removal based on federal-question jurisdiction, a defendant must show that the
plaintiff has (1) alleged a federal claim, Am. Well Works Co. v. Layne & Bowler
Co., 241 U.S. 257, 260 (1916); (2) alleged a state cause of action that Congress has
transformed into an inherently federal claim by completely preempting the field,
Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987); or (3) alleged a state-law
claim that necessarily raises a disputed and substantial issue of federal law that a
federal court may entertain without disturbing federal/state comity principles,
Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005).

      To determine whether jurisdiction is present for removal, the court
considers the claims in the state court petition as they existed at the time of
removal. Louisiana v. Am. Nat. Prop. Cas. Co., 746 F.3d 633, 637 (5th Cir. 2014)
(citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir.
1995)).  Because removal jurisdiction implicates federalism concerns, all
ambiguities must be construed in favor of remand.  Barker v. Hercules Offshore,
Inc., 713 F.3d 208, 212 (5th Cir. 2013) (citing Manguno v. Prudential Prop. & Cas.
Co., 276 F.3d 720, 723 (5th Cir. 2002)).

II.    <u>Motion for Leave to File Amended Complaint</u>

A party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Because Rule 15(a) evinces a bias in favor of granting leave to amend, <u>Price v. Pinnacle Brands, Inc.</u>, 138 F.3d 602, 608 (5th Cir. 1998), a district court "must possess a substantial reason to deny a request for leave to amend."  <u>Smith v. EMC Corp.</u>, 393 F.3d 590, 595 (5th Cir. 2004) (internal quotation marks omitted).  Following the Supreme Court's guidance, the Fifth Circuit uses five factors in determining whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment.  <u>Rosenzweig v. Azurix Corp.</u>, 332 F.3d 854, 864 (5th Cir. 2003) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

An amendment is futile if it could not survive a motion to dismiss. <u>Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.</u>, 620 F.3d 465, 468

(5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

DISCUSSION

## I.   <u>Motion to Remand</u>

Plaintiffs argue that this case should be remanded to state court because (1) their Original Petition does not involve a federal question; (2) Defendants' copyright claim is insufficient to give this Court jurisdiction over the case because the state claims predominate and will be dispositive of the controversy; (3) the parties are not diverse;[1] (4) Defendants previously asked the state court for affirmative relief and have reached agreements invoking the state court's injunctive powers, thereby waiving their right to removal; and (5) Defendants filed their Notice of Removal more than 30 days after they were served with Plaintiffs' Original Petition. (Dkt. # 15 ¶ 11.)

### A.   <u>Federal Question Jurisdiction and Copyright Claim</u>

Defendants removed this action to federal court on the basis of the federal copyright infringement claim included in their amended counterclaim.

---

[1] While this assertion is correct, it is not relevant to the jurisdictional analysis because Defendants do not attempt to remove this action on the basis of diversity. (Dkt. # 19 at 3 n.3.)

(Dkt. # 19 at 3.)  Under 28 U.S.C. § 1454, "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to . . . copyrights may be removed to the district court of the United States for the district and division embracing the place where the action is pending."  28 U.S.C. § 1454(a).

Generally, federal question jurisdiction is only present when the plaintiff's own complaint includes a cause of action arising under federal law. Vaden v. Discover Bank, 556 U.S. 49, 60 (2009) (citing Louisville & Nashville R. Co. v. Mottley, 221 U.S. 149, 152 (1908)).  Consequently, federal jurisdiction cannot "rest upon an actual or anticipated counterclaim."  Id. (citing Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831–32 (2002)).  The Supreme Court has held that a federal counterclaim does not establish federal question jurisdiction, and observed that allowing a counterclaim to create federal question jurisdiction would "undermine the clarity and simplicity of [the well-pleaded complaint] rule" because courts would be "obliged to consider the contents not only of the complaint but also of responsive pleadings in determining whether a case 'arises under' federal law."  Id. at 60–61 (citing Holmes Grp., 535 U.S. at 832).

In response to the Holmes Group holding, and to prevent state courts from adjudicating federal patent and copyright claims presented in counterclaims,

Congress passed the so-called "Holmes Group fix," including 28 U.S.C. § 1454, which allows federal courts to hear cases involving patent and copyright counterclaims.  See Donahue v. Tokyo Electron Am., Inc., —F. Supp. 3d—, No. A-14-CA-563-SS, 2014 WL 4259386, at *2 (W.D. Tex. Aug. 27, 2014) (citing Joe Matal, A Guide to the Legislative History of the American Invents Act: Part II of II, 21 Fed. Cir. B.J. 539, 539–20 (2012)).  Under § 1454, a defendant asserting a copyright counterclaim is clearly permitted to remove the action to federal court. Id. at *5.

Here, Defendants assert a counterclaim for copyright infringement under 17 U.S.C. § 501.  (Dkt. # 1, Ex. C ¶¶ 65–70.)  To establish jurisdiction under § 1454, this claim must "arise under" the federal Copyright Act.  An action arises under the Copyright Act if the complaint is for a remedy expressly granted by the Act or asserts a claim requiring construction of the Act.  Goodman v. Lee, 815 F.2d 1030, 1031 (5th Cir. 1987).  Defendants claim that Plaintiffs and Third Party Defendants RPI and Corporación EG directly and/or indirectly infringed, and continue to infringe, Hageman's copyright in at least one image by copying, producing, distributing, using, sharing, or publishing that image in order to generate business.  (Dkt. # 1, Ex. C ¶ 67).  This claim requires the Court to determine whether these alleged actions "violate[] any of the exclusive rights of the copyright owner as provided by sections 106 through 122" of the Copyright

Act.  17 U.S.C. § 501(a).  Because the Court must construe the Act to adjudicate this claim, Defendants' counterclaim "arises under" the Copyright Act and they are entitled to remove this action under § 1454.

> B.     Timeliness of Defendants' Notice of Removal

Plaintiffs also argue that Defendants' Notice of Removal was not timely because it was filed on November 4, 2014, more than thirty days after Defendants were served with Plaintiffs' Original Petition on September 16, 2014. (Dkt. # 15 ¶ 11.)  With respect to the timing of removal, § 1454 provides:

> The removal of an action under this section shall be made in accordance with section 1446, except that if the removal is based solely on this section—
> > (1) the action may be removed by any party; and
> > (2) the time limitations contained in section 1446(b) may be extended at any time for cause shown.

28 U.S.C. § 1454(b).  Thus, the timeliness of removal is governed by § 1446, the general removal statute.  Under § 1446, a defendant must file a notice of removal within thirty days after receiving "a copy of the initial pleading setting for the claim for relief."  If the case as stated in the initial pleading is not removable, a defendant may file a notice of removal within thirty days after receiving a copy of the "document from which it may ascertain that the case is, or has become, removable."  28 U.S.C. § 1446(b).

As the Donahue court noted, "§ 1446 is premised on the well-pleaded complaint rule, and accordingly does not contemplate defendants asserting

13

counterclaims as the basis for federal question jurisdiction and removal."

Donahue, 2014 WL 4259386, at *4.  But because § 1454 "specifically allows a

defendant to remove a case based on the assertion of a copyright counterclaim even

if the case otherwise is completely devoid of federal jurisdiction," there is an

"inherent tension" between § 1454 and the general removal statute.  Id.  The

Donahue court did not resolve this tension, as it found that there was good cause to

extend the removal deadline as permitted by 28 U.S.C. § 1454(b)(2) because doing

so would result in minimal prejudice under Rule 6(b) of the Federal Rules of Civil

Procedure.  Id. at *6.

      Rule 6(b)(1)(B) provides that a district court may extend a deadline

for good cause if the party seeking an extension failed to meet the original deadline

because of "excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  District courts have

"broad discretion" to grant or deny extensions.  Salts v. Epps, 676 F.3d 468, 474

(5th Cir. 2012).  The Fifth Circuit has noted a number of factors courts may

consider in determining whether a party has demonstrated "excusable neglect,"

including "(1) the possibility of prejudice to other parties, (2) the length of the

applicant's delay and its impact on the proceeding, (3) the reason for the delay and

whether it was within control of the movant, and (4) whether the movant has acted

in good faith."  Id. (quoting Wright & Miller, Federal Practice and Procedure

§ 1165).

Applying these factors, the Court finds there is good cause to extend the thirty-day deadline.  If Defendants were served with Plaintiffs' Original Complaint on September 16, 2014, their deadline to remove the case would have been October 16, 2014.  Defendants filed their Notice of Removal on November 4, 2014, twenty days after the deadline.  The state court record shows that no action was taken in this case between October 16 and November 4, 2014, and thus the late removal had no impact on the proceeding and did not result in prejudice to Plaintiffs.  (See Dkt. # 1, Exs. D–G.)  Regarding the reason for their delay, Defendants state that Hageman did not file for copyright registration of the relevant images with the United States Copyright Office until October 28, 2014. (Dkt. # 19, Ex. A ("Hageman Decl.") ¶ 6.)  Under 17 U.S.C. § 411(a), a litigant may not institute a civil action for copyright infringement until the litigant has registered the copyright.  Defendants filed their amended counterclaim only days later.  The Court finds there was good reason for the delay, and that Defendants did not act in bad faith.  For these reasons, and because allowing removal achieves Congress's aim of ensuring that federal courts are able to adjudicate copyright claims, the Court finds good cause to extend the deadline under § 1454(b)(2).  See Donahue, 2014 WL 4259386, at *7 (finding good cause to extend the deadline where Defendants filed their copyright counterclaim six days after registering their copyrights and the length of delay was approximately three weeks).

C.    Waiver of Right to Removal

Plaintiffs next argue that Defendants waived their right to removal by asking the state court for affirmative relief and by reaching agreements invoking the injunctive power of the state court.  (Dkt. # 15 ¶ 11.)  Plaintiffs do not elaborate on these assertions.  Even if a defendant timely files a notice of removal, the defendant may waive its right to removal "by proceeding to defend the action in state court or otherwise invoking the process of that court."  Brown v. Demco, Inc., 792 F.2d 487, 481 (5th Cir. 1986).  "A waiver of the right to removal must be clear and unequivocal."  Beighley v. F.D.I.C., 868 F.2d 776, 782 (5th Cir. 1989), superseded on other grounds as stated in Tedford v. Warner-Lambert Co., 327 F.3d 423, 428 n.14 (5th Cir. 2003)).  District courts have generally held that where a case is not initially removable, whether or not the defendant has waived the right to removal turns on actions taken once the case becomes removable.  See, e.g., Pena v. Home Depot U.S.A., Inc., 32 F. Supp. 3d 747, 752 (S.D. Tex. 2012); Ortiz v. Brownsville Indep. Sch. Dist., 257 F. Supp. 2d 885, 889–90 (S.D. Tex. 2003); Jacko v. Thorn Americas, Inc., 121 F. Supp. 2d 574, 576 (E.D. Tex. 2000).

In this case, Defendants took no action at all in state court after asserting their counterclaim for copyright infringement.  Defendants filed their notice of removal on the same day that the basis for removal was established by the

16

filing of their amended counterclaims.  The Court therefore finds that Defendants did not waive their right to removal.

      D.     <u>Supplemental Jurisdiction Over State Law Claims</u>

      Finally, Plaintiffs argue that removal is improper because state claims predominate in this case and, regardless of any federal copyright issue, the state claims will be dispositive of the controversy.  (Dkt. # 15 ¶ 11.)  Defendants respond that the Court should exercise supplemental jurisdiction over the state law claims because they arise from the same nucleus of operative fact as the federal copyright claim.  (Dkt. # 19 at 9.)

      A district court may exercise supplemental jurisdiction over all claims that "form part of the same case or controversy" as the claim over which the court has original jurisdiction.  28 U.S.C. § 1367(a).  The Supreme Court has held that "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and the state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'"  <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 349 (1988) (quoting <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966)).

      In this case, Plaintiffs bring claims for breach of contract, based on Defendants' refusal to allow Plaintiffs access to the Premises, and conversion,

based on the property Plaintiffs allegedly left behind at the Premises.  (Dkt. # 1, Ex. A ¶¶ 8–9).  Defendants bring claims for copyright infringement, misappropriation of trade secrets, conspiracy to misappropriate trade secrets, breach of contract, fraud, and fraud in a real estate transaction.  (Dkt. # 1, Ex. C. ¶¶ 65–97.)  They also seek a declaratory judgment of IP ownership.  (Id. ¶¶ 98– 101.)  Each of the claims alleged by both parties stems from the agreement between Van Steenburg and Hageman in which Van Steenburg promised to develop certain technology which Van Steenburg and Hageman could jointly market and profit from in exchange for financial support.  Plaintiffs' claims relate only to the financial support, while Defendants' claims relate to Van Steenburg's alleged promises to keep the work confidential.

Nevertheless, the Court finds that the claims form part of the same common nucleus of operative fact, because they each involve the common issues of what the terms of the parties' agreement were and whether Van Steenburg breached those terms.  As Plaintiffs themselves admit, the state claims are directly related to ownership of the property in controversy, including intellectual property. See Donahue, 2014 WL 4259386, at *8 (exercising supplemental jurisdiction over breach of contract, breach-of-computer-security crimes, and misappropriation of trade secrets where court had original jurisdiction over copyright claim and all claims stemmed from plaintiff's alleged misuse of defendant's property after

18

plaintiff's employment was terminated); <u>DEA Specialties Co., Inc. v. DeLeon</u>, No.

SA-14-CA-634-XR, 2014 WL 4385967, at *4 (W.D. Tex. Sept. 4, 2014)

(exercising supplemental jurisdiction over breach of contract, negligence, gross

negligence, tortious interference with prospective business relations, and fraud

claims where court had original jurisdiction over copyright claim and all claims

stemmed from alleged breach of exclusive distributorship agreement and

employment agreement).

However, the Court's inquiry does not end there.  A district court may

decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over
>     which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has
>     original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons
>     for declining jurisdiction.

28 U.S.C. § 1367(c).  Courts should also consider "the principles of economy,

convenience, fairness, and comity."  <u>Cohill</u>, 484 U.S. at 357.  Plaintiffs make the

vague assertion that "the state ownership claims predominate" in this case, but

offer no factual or legal support for their argument.  Having independently

considered the requisite factors, and in light of the fact that the state and federal

law claims turn on the same issues, the Court finds that exercise of supplemental

jurisdiction is proper in this case.  The Court therefore **DENIES** Plaintiffs' Motion to Remand.  (Dkt. # 15.)

      E.    Request for Attorneys' Fees

      Plaintiffs ask the Court to award attorneys' fees, court costs, and expenses incurred in filing their Motion to Remand.  (Dkt. # 15 ¶ 12.)  The removal statute allows a court ordering remand to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  In determining whether to award fees, courts consider "whether the defendant had objectively reasonable grounds to believe the removal was legally proper."  Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (5th Cir. 2000).   Because Defendants prevailed, the Court denies Plaintiffs' request for fees.

      II.    Motion for Leave to File Amended Complaint

      Plaintiffs ask the Court for leave to file their First Amended Complaint and Original Answer to Defendants' Amended Counterclaim.  (Dkt. # 25.)  With respect to their proposed Original Answer, Plaintiffs seek to include affirmative defenses and admissions and denials to Defendants' Amended Counterclaim.  (Id. ¶ 4.)  Plaintiffs argue that the amended pleading is appropriate and necessary (id. ¶ 6), Defendants will not suffer any prejudice (id. ¶ 8), their amended filing would not cause undue delay (id. ¶ 8), Plaintiffs do not make their

motion in bad faith (id. ¶ 10), and the proposed amendments are not futile (id. ¶ 11.)

Defendants have indicated that they do not object to Plaintiffs' Amended Complaint.  (Dkt. # 26 at 2.)  At the hearing held on March 26, 2015, Defendants' counsel also represented that they no longer oppose Plaintiffs' request for leave to file an Original Answer to Defendants' Counterclaim.  Pursuant to these representations, the Court **GRANTS** Plaintiffs' Motion for Leave to File First Amended Complaint.  (Dkt. # 25.)

CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Plaintiffs' Motion to Remand (Dkt. # 13) and **GRANTS** Plaintiffs' Motion for Leave to File First Amended Complaint (Dkt. # 25).

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, March 31, 2015.

_____
David Alan Ezra
Senior United States District Judge