UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT HAGEMAN and RADIANT SOLUTIONS, INC., | § § § | No. SA:14–CV–976–DAE |
| Third-Party Plaintiffs, | § § § | |
| vs. | § § | |
| CORPORACIÓN EG S.A. DE C.V., | § § § | |
| Third-Party Defendant. | § | |

ORDER GRANTING THIRD-PARTY DEFENDANT
<u>CORPORACIÓN EG S.A. DE C.V.'S MOTION TO DISMISS</u>

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process filed by Third-Party Defendant Corporación EG, S.A. de C.V. ("Corporación EG"). (Dkt. # 35.) On March 26, 2015, the Court heard oral argument on the Motion. Charles J. Rogers, Esq., and Darlene Ghavimi, Esq., appeared at the hearing on behalf of Defendants/Third-Party Plaintiffs Robert Hageman and Radiant Solutions, Inc. (collectively, "Defendants"); Ryan C. Bueche, Esq., appeared at the hearing on behalf of Corporación EG. After reviewing the Motion and the supporting and opposing memoranda, and considering the parties' arguments at the hearing, the Court **GRANTS** Corporación EG's Motion to Dismiss. (Dkt. # 35.)

1

BACKGROUND

In late 2013, Defendant Robert Hageman ("Hageman") and Plaintiff Michael Van Steenburg ("Van Steenburg") came to an agreement whereby Van Steenburg would develop a switched reluctance electric controller and motor, different from previous design attempts, which Hageman and Van Steenburg would jointly market and from which they would jointly profit. (Dkt. # 1, Ex. C ¶ 35.) In return, Hageman agreed to provide Van Steenburg with financial support. (Id. ¶ 36–37.) On March 31, 2014, Hageman created a corporation, called Veolectra, to better attract potential investors for the project. (Id. ¶ 39.)

Defendants allege that on November 8, 2013, Van Steenburg forwarded to Hageman a long e-mail chain of correspondence between Van Steenburg and Third Party Defendant Ruhrpumpen, Inc. ("RPI") in which RPI expressed interest in hiring Van Steenburg to manufacture electric motors. (Id. ¶ 45.) According to the e-mails, Van Steenburg met with RPI, signed a non-disclosure agreement and was proceeding towards developing a product for RPI in secret. (Id.) Upon receiving the e-mail chain, Hageman reminded Van Steenburg that their project was to be kept secret and told Van Steenburg to stop communicating with RPI immediately. (Id. ¶ 46.) Defendants claim that Van Steenburg agreed, but that they later learned Van Steenburg did not in fact cut off communication with RPI. (Id.)

2

Defendants further allege that on July 16, 2014, Hageman learned that RPI had hired Van Steenburg to work in Mexico to develop the technology that Van Steenburg had previously agreed to develop for Hageman and Veolectra.  (Id. ¶ 47.)  Hageman then informed Van Steenburg that his financial assistance would be terminated, that Van Steenburg no longer had access to the Premises, and that a board meeting had been called to dissolve Veolectra.  (Id.)  A quorum of directors voted to dissolve Veolectra on July 23, 2014.  (Id. ¶ 51.)  Defendants claim that all intellectual property created by Van Steenburg and the other engineers while working on the switched reluctance motor project, including copyrightable material, is the property of "Veolectra, now Robert Hageman," and that Veolectra owns all copyrights in the copyrightable material.  (Id. ¶ 54.)

On July 25, 2014, Plaintiffs filed their Original Petition in the 207th Judicial District Court in Comal County, Texas.  (Dkt. # 1, Ex. A.)  On November 4, 2014, Defendants filed their First Amended Answer, Affirmative Defenses, Special Exceptions, Amended Counterclaims, and Third Party Petition to Plaintiffs' Original Petition.  (Dkt. # 1, Ex. C.)  In their amended counterclaim, Defendants allege that on information and belief, Van Steenburg disclosed Hageman's confidential and proprietary intellectual property to Corporación EG in an attempt to enter into a financial or business relationship with that company.  (Id. ¶ 15.)

On December 5, 2014, Corporación EG filed a Special Appearance and Objections to Personal Jurisdiction and Service of Process, indicating the bases for its forthcoming Motion to Dismiss and its intent to submit briefing in support of its objections.  (Dkt. # 16.)  On February 2, 2015, Corporación EG filed the instant Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process.  (Dkt. # 35.)  On February 16, 2015, Defendants filed a Response in Opposition to the Motion.  (Dkt. # 37.)  On February 27, 2015, Corporación EG filed a Reply (Dkt. # 42), and on March 10, 2015, Defendants filed a Sur-Reply (Dkt. # 46).

## LEGAL STANDARD

I.    Motion to Dismiss Under Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where the court lacks personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of making a prima facie showing that personal jurisdiction is proper.  Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 431 (5th Cir. 2014).  When ruling on a Rule 12(b)(2) motion to dismiss, the court takes uncontroverted allegations in the plaintiffs' complaint as true.  Johnston v. Multidata Sys. Intern. Corp., 523 F.3d 602, 609 (5th Cir. 2008).  When a defendant disputes the factual basis for personal jurisdiction, the district court may consider evidence including "affidavits, interrogatories,

depositions, oral testimony, or any combination of the recognized methods of discovery." Quick Techs., Inc. v. Sage Grp. PLC, 313 F.3d 338, 344 (5th Cir. 2002). Conflicts between facts contained in the parties' affidavits and other documentation must be resolved in the plaintiffs' favor. Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002).

II.   Motion to Dismiss Under Rule 12(b)(5)

Rule 12(b)(5) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where service of process upon the defendant was insufficient. Fed. R. Civ. P. 12(b)(5). The party attempting to effectuate service has the burden of establishing its validity. Carimi v. Royal Caribbean Cruise Line, Inc., 959 F.2d 1344, 1346 (5th Cir. 1992).

DISCUSSION

Corporación EG asks the Court to grant its Motion to Dismiss on the following grounds: (1) the Court does not have general jurisdiction over Corporación EG, (2) the Court does not have specific personal jurisdiction over Corporación EG, and (3) Defendants' attempted service of process did not comply with the mandatory provisions of the Hague Convention. (Dkt. # 35 at 1–2.)

I.   Personal Jurisdiction

A court may properly exercise personal jurisdiction over a nonresident defendant when (1) the defendant is subject to personal jurisdiction under the laws

of the state in which the federal court sits; and (2) the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–74 (1985).  The Texas long-arm statute authorizes personal jurisdiction over nonresident defendants to the extent permissible under the federal Due Process Clause.  Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999) (citing Tex. Civ. Prac. & Rem. Code § 17.041).

"Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 867 (5th Cir. 2001) (per curiam).  "To establish that personal jurisdiction is proper, the plaintiff must show that the nonresident defendant purposefully availed [itself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state."  Monkton, 768 F.3d at 431 (internal quotation marks omitted); accord Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). "Sufficient minimum contacts will give rise to either specific or general jurisdiction."  Revell, 317 F.3d at 470.

A.    General Jurisdiction

Corporación EG argues that Defendants cannot carry their burden of establishing that the Court has general personal jurisdiction over Corporación EG because Corporación EG is not "at home" in Texas, as required under the Supreme Court's recent decision Daimler AG v. Bauman, 134 S. Ct. 746 (2014), for the exercise of general jurisdiction.  (Dkt. # 35 at 1.)

The proper consideration when determining whether a court may exercise general jurisdiction over a defendant is whether the defendant's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"  Daimler, 134 S. Ct. at 761 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (alteration in original).  The Supreme Court held that corporations are "at home" in "the place of incorporation and principal place of business;" thus, these places are the "paradigm bases" for general jurisdiction.  Monkton, 768 F.3d at 432 (quoting Daimler, 134 S. Ct. at 760).  While these places are not the only forums in which a corporation may be subject to general jurisdiction, the Fifth Circuit has noted that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."  Id.

Defendants' amended third party petition states that "this Court has general jurisdiction over Third Party Defendants because they conduct business in

the State of Texas."  (Dkt. # 1, Ex. C ¶ 29.)  Corporación EG is an entity organized under the laws of Mexico, and it has its only place of business in San Pedro Garcia Garza, Nuevo León, Mexico.  (Dkt. # 35, Ex. B ("Garza Decl.") ¶ 2.)  It is therefore "at home" in Mexico, see Monkton, 768 F.3d at 432 (finding defendant corporation at home in the Cayman Island where it was incorporated there and had its principle place of business there), and Defendants have presented the Court with no alternative evidence that would place Corporación EG "at home" in Texas. Notably, Defendants do not address the issue of general jurisdiction in their Response in Opposition to Corporación EG's Motion to Dismiss.  (Dkt. # 37-2.) The Court therefore concludes that it does not have general personal jurisdiction over Corporación EG.

     B.    <u>Specific Jurisdiction</u>

       Corporación EG next argues that Defendants cannot carry their burden of establishing that the Court has specific personal jurisdiction over Corporación EG because none of Corporación EG's alleged contacts with Texas give rise to Defendants' claims for conspiracy to misappropriate trade secrets, and none of the alleged contacts qualify as "sufficient" pre-litigation connections between Corporación EG and Texas.  (Dkt. # 35 at 2.)

       Unlike general jurisdiction, the specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation."  <u>Walden v.</u>

8

Fiore, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks and citations omitted).  The Fifth Circuit applies a three-step analysis to the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006) (citation omitted).  The plaintiff bears the burden of satisfying the first two prongs; if the plaintiff is successful, the burden shifts to the defendant to show that that exercising jurisdiction would be unfair or unreasonable.  Id.

Defendants' amended third party petition states that "this Court has specific jurisdiction over Third Party Defendants because they avail themselves of the protections of the laws of this jurisdiction by conducting business activities and committing torts in the State of Texas, which activities and torts form a basis for this counterclaim."  (Dkt. # 1, Ex. C ¶ 29.)  Defendants argue that the exercise of specific jurisdiction is appropriate because (1) Ruhrpumpen S.A. de C.V ("Rurhpumpen S.A.") and RPI's contacts with Texas should be imputed to Corporación EG;  (2) Corporación EG committed a tort in Texas that had foreseeable effects in Texas, and (3) Corporación EG impliedly consented to jurisdiction in Texas.  (Dkt. # 37, 14–23.)

9

1.    <u>Alter Ego Theory</u>

Defendants argue that because Corporación EG is an "alter ego" of Rurhpumpen S.A. and RPI, Ruhrpumpen S.A. and RPI's contacts with Texas should be imputed to Corporación EG for the purpose of the jurisdictional analysis. (Dkt. # 37 at 21.)  "Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts."  <u>Dickson Marine Inc. v. Panalpina, Inc.</u>, 179 F.3d 331, 338 (5th Cir. 1999).  The relationship between the parent corporation and its subsidiary must be such that they are, in reality, the same corporation.  <u>Hargrave v. Fibreboard Corp.</u>, 710 F.2d 1154, 1159 (5th Cir. 1983).  This generally requires the corporate separation to be a fiction.  <u>Id.</u> at 1160.  If, on the other hand, the parent corporation and the subsidiary "maintain separate and distinct corporate entities, the presence of one in the forum state may not be attributed to the other."  <u>Id.</u>  The proponent of the alter ego theory bears the burden of overcoming the presumption of corporate separateness by "clear evidence."  <u>Id.</u>

The Fifth Circuit has set out a number of nonexhaustive factors to consider in determining whether a parent corporation may be subject to personal jurisdiction because of its subsidiary's acts in the forum state.  <u>Freudensprung v.</u>

Offshore Technical Servs., Inc., 379 F.3d 327, 346 (5th Cir. 2004).  Those factors

are:

> (1) the amount of stock owned by the parent of the subsidiary;
> (2) whether the entities have separate headquarters, directors, and
> officers; (3) whether corporate formalities are observed; (4) whether
> the entities maintain separate accounting systems; and (5) whether the
> parent exercises complete control over the subsidiary's general
> policies or daily activities.

Id. (citing Hargrave, 710 F.2d at 1160).  Overall, "[r]esolution of alter ego issues

must be based on a consideration of the totality of the circumstances."  Gundle

Lining Const. Corp. v. Adams Cnty. Asphalt, Inc., 85 F.3d 201, 209 (5th Cir.

1996) (internal quotation marks omitted).

      Corporación EG admits that Ruhrpumpen S.A. and RPI are

subsidiaries of Corporación EG, but state that all three are "separate and distinct

corporate entities, which each maintains separate corporate formalities."  (Garza

Decl. ¶ 5.)  Defendants concede that much of the relevant information pertaining to

a potential alter ego relationship is unknown.  (Dkt. # 37 at 22.)  However,

Defendants point to several pieces of information they claim establish an alter ego

relationship between Corporación EG and Rurhpumpen S.A. and RPI.  (Id. at 3–4,

21–23.)

      i.    Rurhpumpen S.A.

      As to Rurhpumpen S.A., Defendants assert that Rurhpumpen S.A. and

Corporación EG have their headquarters in the same location, and that

consequently their boards of directors "likely overlap." (Id. at 4.)  However, even

identical boards of directors do not establish an alter ego relationship in this circuit.

Hargrave, 710 F.2d at 1160 ("100% stock ownership and commonality of officers

and directors are not alone sufficient to establish an alter ego relationship between

two corporations").  Similarly, shared office space does not establish an alter ego

relationship.  See Jackson v. Tanfoglio Giuseppe, S.R.L., 615 F.3d 579, 588 (5th

Cir. 2010) (declining to find alter ego where two entities shared office space and

phone numbers).[1]  The Court finds that shared headquarters and Defendants'

speculation about Rurhpumpen S.A. and Corporación EG's boards of directors

cannot support an alter ego finding, and consequently that Rurhpumpen S.A.'s

contacts with the forum cannot be imputed to Corporación EG under the alter ego

theory.

ii.   RPI

As to RPI, Defendants first assert that José A. Elizondo Garza

("Garza") is an officer and director of both Corporación EG and RPI.  (Dkt. # 37 at

21.)  Again, however, the Fifth Circuit has recognized that even if a subsidiary

shares an identical board of directors and officers with its parent corporation, this

---

[1] Corporación EG disputes the assertion that Rurhpumpen S.A. and Corporación
EG have their corporate headquarters at the same location.  (Dkt. # 42 at 7.)
According to Corporación EG, Ruhrpumpen S.A. is located in Monterrey, Mexico,
while Corporación EG has its corporate headquarters in Nuevo León, Mexico.  (Id;
Garza Decl. ¶ 2.)  Even taking Plaintiffs' assertions as true, shared office space is
not enough to establish an alter ego relationship.

fact does not supply a sufficient basis for applying the alter ego theory absent additional evidence.  Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 219 (5th Cir. 2000).  Rather, the existence of shared officers merely reflects a normal parent-subsidiary relationship.  See Hargrave, 710 F.2d at 1160.

        Next, Defendants claim that John Folks ("Folks"), who is in-house counsel for RPI, took part in negotiations with Van Steenburg at Corporación EG's request, thus evidencing the fact that Corporación EG directs the actions of its subsidiaries.  (Dkt. # 37 at 4.)  It is true that proof of control by the parent corporation over the subsidiary's business operations and affairs will "fuse" the two entities for jurisdictional purposes.  Hargrave, 710 F.2d at 1160.  However, "[t]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship."  Id.  Defendants point to no authority suggesting that a single act (here, sending Folks to take part in negotiations with Van Steenburg) can establish a degree of control greater than that normally associated with common ownership and directorship.  Indeed, courts routinely require far greater showings of control before fusing a parent and subsidiary for jurisdictional purposes.  See, e.g., Jackson v. Tanfoglio Giuseppe, S.R.L., 615 F.3d 579, 588 (5th Cir. 2010) (declining to find an alter ego where two entities shared products, office space, officers, and directors and employees could not distinguish the two because they followed all corporate legalities necessary to

maintain distinct entities and there was nothing to suggest that corporate
formalities were not observed at all times); Dalton v. R & W Marine, Inc., 897
F.2d 1359, 1363 (5th Cir. 1990) (declining to find an alter ego even though one
entity owned 100% of its subsidiary, was responsible for corporate policy,
funneled revenues into centralized accounts, and filed consolidated tax returns
because those factors were "outweighed, albeit modestly" by observation of
corporate formalities and subsidiary control over certain daily operations).[2]
Because one shared officer and one instance of sending an employee to participate
in negotiations does not rise to the level of control necessary for an alter ego
finding, the Court finds that Corporación EG is not the alter ego of RPI, and RPI's
contacts with the forum cannot be imputed to Corporación EG under the alter ego
theory.

### 2.   Intentional Tort and Purposeful Availment

Defendants next argue that Corporación EG is subject to specific
personal jurisdiction because it committed an intentional tort in Texas that had
foreseeable effects in Texas. (Dkt. # 37 at 14.) The Fifth Circuit has explained
that "[w]hen the actual content of communications gives rise to intentional tort

---

[2] Defendants also claim, without elaboration, that Garza's actions "demonstrate
that he directs the operations and activities of Ruhrpumpen SA and RPI. Mr.
Garza told individuals from RPI and Ruhrpumpen SA to meet with Plaintiffs on
[Corporación EG's] behalf." (Dkt. # 37 at 22.) Even if this were true, it fails to
establish an alter ego relationship for the same reasons stated above.

causes of action, this alone constitutes purposeful availment" for the purpose of satisfying the minimum contacts standard.  <u>Wein Air Alaksa, Inc. v. Brandt</u>, 195 F.3d 208, 213 (5th Cir. 1999).  A plaintiff must show both that the alleged act had an effect in the forum state, and that the defendant purposefully directed a specific tortious act toward the forum state.  <u>Panda Brandywine</u>, 253 F.3d at 869–70. Defendants assert that the November 5, 2013 non-disclosure agreement ("2013 NDA") between Rurhpumpen S.A. and Veolectra, the April 21, 2014 meeting in Texas, and the June 30, 2014 non-disclosure agreement between Corporación EG and Van Steenburg ("2014 NDA") all demonstrate that Corporación EG conspired with Van Steenburg to misappropriate Veolectra's trade secrets.  (Dkt. # 37 at 14.)

i.     <u>2013 NDA</u>

Defendants first argue that the 2013 NDA specifically contemplates the exchange of confidential information, and that it thus gives rise to the misappropriation of trade secrets cause of action.  (<u>Id.</u> at 15.)  Corporación EG argues that this document is not germane to the jurisdictional analysis for two reasons.  First, Corporación EG asserts that it was not a party to the agreement. (Dkt. # 35 at 23.)  Second, Corporación EG argues that the NDA does not contemplate that Veolectra would disclose any trade secrets to Ruhrpumpen S.A. (<u>Id.</u>)

The 2013 NDA is a "Mutual Confidentiality Agreement . . . by and between Ruhrpumpen SA de CV . . . and Veolectra Corporation."  (Dkt. # 35, Ex. D ("2013 NDA") at 1.)   The agreement further provides that Ruhrpumpen S.A. "is entering into this Agreement on its own behalf, and on behalf of any of its current or future parent, subsidiaries, and commonly owned affiliates, including but not limited to any of its commonly owned international parent, subsidiaries and affiliates." (Id.)  According to Defendants, this language binds Corporación EG as Ruhrpumpen S.A.'s affiliate or parent corporation.  (Dkt. # 37 at 6.)  Corporación EG contends that it was not a party to the agreement and that the agreement therefore has no bearing on the jurisdictional analysis.  (Dkt. # 35 at 23.)

The 2013 NDA is governed by Texas law.  (2013 NDA at 5.)  In Texas, a party who is not a signatory to a contract is not subject to the contract's provisions.  Pepe Intern. Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 931 (Tex. App. 1996) (holding that non-signatories were not parties to the contract and thus had no right to compel arbitration under the contract).  Because Corporación EG was not a signatory to the 2013 NDA, it was not a party to that agreement and thus cannot be characterized as purposefully availing itself of the benefits and protections of Texas law.  See Paolino v. Argyll Equities, L.L.C., 401 F. Supp. 2d 712, 720 (W.D. Tex. 2005) (holding that only a party to a contract governed by

Texas law invokes the benefits and protections of Texas law).  As such, the 2013 NDA does not bear on the minimum contacts analysis and the issue of whether it contemplates that Veolectra would disclose any trade secrets to Ruhrpumpen S.A. is irrelevant for jurisdictional purposes.

      ii.    April 21, 2014 Meeting

Defendants next claim that the April 21, 2014 meeting between Corporación EG and Van Steenburg establishes jurisdiction because it was carried out on the specific instructions and order of Corporación EG, and Veolectra's trade secrets were disclosed during the meeting.  (Dkt. # 37 at 15.)  Corporación EG argues that this meeting cannot give rise to Defendants' claim for conspiracy to misappropriate trade secrets because no trade secrets were sought or disclosed at that meeting.  (Dkt. # 35 at 24.)

In support of their assertion that Corporación EG received trade secrets during the April 21, 2014 meeting, Defendants cite the declaration of Victor de Jesus Melendez Leal ("Leal") and an agenda titled "Proposed Joint Venture Corp EG-MVS Project Meeting" from the meeting.  (Dkt. # 37 at 7, 15.)  According to Leal's declaration, Corporación EG asked Folks and Leal, who is an employee of Servicios Administrativos EG, S.A. de C.V. assigned to work for Rurhpumpen S.A., to meet with Van Steenburg on April 21, 2014 in order to explore whether one of Corporación EG's subsidiaries might benefit from entering

17

into a joint venture agreement.  (Dkt. # 35, Ex. C ("Leal Decl.") ¶ 10.)  Leal further

stated, "I am not aware of any trade secrets allegedly belonging to Defendants that

Mr. Van Steenburg disclosed during that meeting, and we certainly did not seek the

disclosure of any trade secrets allegedly belonging to Defendants or any other third

party."  (Id.)  Leal admits that he and Folks were "shown a demonstration of a

working electric motor," but claims that "we were not told that the motor was a

trade secret, nor did we believe it to be such.  Mr. Folks and I did not receive or see

any drawings or technical information, or any other information that was either

identified as trade secret or believed to have possibly been considered trade

secret."  (Id.)  Instead, Leal asserts, "[the] discussions with Mr. Van Steenburg

were general in nature, such as Mr. [Van] Steenburg's biographical and resume

information."  (Id.)

   Defendants speculate that the motor Leal and Folks viewed "very

likely was the prototype that is the subject of Veolectra's patent application."

(Dkt. # 37 at 9.)  Corporación EG responds that this assertion is unsupported by

evidence, and that it is "illogical to believe that simply seeing a motor operate

provides the viewer with knowledge regarding specific design characteristics or

other alleged trade secrets."  (Dkt. # 42 at 9–10.)  The Court need not accept

"merely conclusory" allegations as true, Cent. Freight Lines Inc. v. APA Transp.

Corp., 322 F.3d 376, 380 (5th Cir. 2003), and Defendants' assertion is unsupported

18

by any other evidence in the record; neither the April 21, 2014 meeting nor the prototype motor are mentioned in Defendant's Complaint or any other evidence submitted by Defendants.  See Melson v. Vista World Inc. & Assocs., No. 12-135, 2012 WL 6002680, at *8 (E.D. La. Nov. 30, 2012) (finding "self-serving, uncorroborated" speculation insufficient to support a prima facie case of personal jurisdiction).  The Court thus finds that Defendants' unsubstantiated assertion that the prototype motor was probably the subject of Veolectra's patent application is insufficient to meet their burden of making a prima facie showing that jurisdiction is proper.[3]

Defendants next point to the agenda they claim Van Steenburg created for the meeting.  (Dkt. # 37 at 15.)  The agenda includes a section titled "Extent of the Patents owned by Veolectra/MVS."  (Dkt. # 37, Ex. 8 at 4.)  That section lists: (1) five patents issued to "Honeywell," (2) four pending applications by Van Steenburg, (3) "several new patent applications to be developed" by Van Steenburg, and (4) three additional categories of intellectual property relating to existing 200 kW SR motor drive systems and new Axial Flux motor and control systems belonging to Van Steenburg.  (Id.)  As Corporación EG notes, the first two

---

[3] Defendants also argue that Leal admits in his declaration that the parties discussed intellectual property at the April 21, 2014 meeting.  (Dkt. # 37 at 9.) However, as Corporación EG points out, this is not the case.  In fact, Leal clearly states that "[t]he discussions with Mr. Van Steenburg were general in nature," and that topics of discussion were limited to such items as Van Steenburg's "biographical and resume information."  (Leal Decl. ¶ 10.)

categories cannot give rise to Defendants' conspiracy to misappropriate trade secrets claim, because "[s]ubject matter publicly disclosed, including that which is disclosed as an issued patent or in a published patent application, is not secret and thus cannot be protected as a trade secret." Aquasource Holdings, LLC v. Oxxytec, Inc., No. H-11-1681, 2011 WL 3269320, at *3 (S.D. Tex. July 28, 2011) (citing Luccous v. J.C. Kinley Co., 376 S.W.2d 336, 338 (Tex. 1964); Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC, 637 F.3d 604, 611–12 (5th Cir. 2011)).

Even if the latter two intellectual property categories listed on the agenda did constitute evidence that Veolectra's trade secrets were disclosed at the meeting, the Court cannot consider the agenda, because it is offered for the truth of the matter asserted (that potential trade secrets were discussed at the meeting) and thus constitutes impermissible hearsay. See Fed. R. Evid. 801; Gonannies, Inc. v. Goaupair.com, Inc., No. 3:06-CV-0631-L, 2011 WL 1112592, at *5 (N.D. Tex. Apr. 13, 2007) (noting that hearsay evidence is "not properly considered in the court's analysis of whether it has personal jurisdiction over [a defendant]."). Furthermore, the agenda cannot be admitted under the business records exception to the rule against hearsay, because it has not been properly authenticated: Defendants attempt to authenticate the document through a supplemental affidavit by Hageman, which states that the agenda "is a true and accurate copy of a

20

document obtained from a computer owned by Veolectra and used by Plaintiff Michael Van Steenburg," (Dkt. # 46, Ex. 1 ¶ 5), but this affidavit is insufficient to authenticate the document.  <u>See</u> Fed. R. Evid. 803(6); <u>Coughlin v. Capitol Cement Co.</u>, 571 F.2d 290, 307 (5th Cir. 1978) (finding no error in trial court's refusal to admit meeting agenda because of a lack of authentication under Rule 803(6) where the agenda was found during discovery, did not bear a signature, and witnesses could only speculate as to who prepared it).[4]  For these reasons, the Court finds that the April 21, 2014 meeting was insufficient to create minimum contacts between Corporación EG and the forum state.

### iii.   <u>2014 NDA</u>

Finally, Defendants claim that the 2014 NDA between Corporación EG and Van Steenburg demonstrates a conspiracy between the parties to misappropriate Defendants' trade secrets.  (Dkt. # 37 at 16.)  Specifically, Defendants point to a PowerPoint presentation titled "Joint Venture Electric Motor Company Proposal," which Defendants allege Van Steenburg showed Corporación EG's board of directors at a meeting on May 22, 2014.  (<u>Id.</u> at 9.)

---

[4] Defendants object to Corporación EG's hearsay objection as untimely, because they were raised for the first time in Corporación EG's reply brief.  (Dkt. # 46 at 3.)  However, the Court properly considers the objection because Defendants were given the opportunity to respond to it in a sur-reply, which the Court has fully and carefully considered.  <u>See</u> <u>Vais Arms, Inc. v. Vais</u>, 383 F.3d 287, 292 (5th Cir. 2004) (holding that a district court may consider a reply brief's new arguments and evidence as long as the opposing party is given an adequate opportunity to respond).

According to Defendants, the PowerPoint disclosed Veolectra's trade secrets and copyrighted images, and that after this presentation, Corporación EG entered into a non-disclosure agreement with Van Steenburg on June 30, 2014.  (Id.)

Corporación EG admits that Van Steenburg met with its board of directors in Mexico on May 22, 2014, and that it thereafter executed the NDA with Van Steenburg.  (Garza Decl. ¶ 9.)   However, Corporación EG argues that the meeting cannot confer specific jurisdiction because it took place in Mexico, and an act committed outside of the forum can only serve as a basis for jurisdiction if the consequences of that act were seriously harmful, and the nonresident defendant either intended those consequences or knew that they were highly likely to follow from the defendant's out-of-state act.  (Dkt. # 42 at 12 (citing Nocando Mem Holdings, Ltd. v. Credit Comm'l de France, S.A., No. SA-01-1194-XR, 2004 WL 2603739, at *19 (W.D. Tex. Oct. 6, 2004)).)  Additionally, Corporación EG objects to the PowerPoint as unauthenticated hearsay.  (Id.)

The Fifth Circuit has held that in intentional tort cases, an act done outside of the forum state "that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."  McFadin v. Gerber, 587 F.3d 753, 761 (5th Cir. 2009); Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 628 (5th Cir. 1999); Calder

v. Jones, 465 U.S. 783, 789–90 (1984).  Additionally, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."  McFadin, 587 F.3d at 762 (quoting Wein Air, 195 F.3d at 212).

Even if the Court does consider the PowerPoint, Defendants have not presented sufficient evidence to make a prima face showing that Corporación EG knew that "seriously harmful" consequences were intended or highly likely to result from the meeting or the 2014 NDA, or that they directed specific acts towards Texas.  Defendants repeatedly insist in their briefs that Corporación EG knew that the information presented by Van Steenburg belonged to Veolectra and not to Van Steenburg personally.  Defendants do allege in their Complaint that "[o]n information and belief, Van Steenburg has, without license or permission, disclosed the confidential and proprietary intellectual property of Hageman, including one or more images for which Hageman has applied for copyright registrations, to Corporación [EG] . . . through PowerPoint presentations and other documents."  (Dkt. # 1, Ex. C ¶ 62.)

While the Court must accept uncontroverted allegations in the Complaint as true, once the party opposing jurisdiction has "submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must submit affirmative evidence supporting the exercise of jurisdiction."  Melson, 2012

23

WL 6002680, at *8.  Here, Corporación EG has presented the Court with a sworn
declaration stating that Corporación EG was not aware of Hageman or Veolectra's
claimed ownership in the intellectual property until receiving a letter from
Hageman's attorney on August 2, 2014.  (Garza Decl. ¶ 10.)[5]  Without knowledge
of Hageman or Veolectra's claimed interest in the intellectual property,
Corporación EG could not have known that "seriously harmful" consequences
were intended or highly likely to result from the meeting or the 2014 NDA, nor
could it have directed specific activities with foreseeable consequences at Texas.
See Baker Hughes Inc. v. Homa, No. H-11-3757, 2013 WL 5775636, at *14 (S.D.
Tex. Oct. 25, 2013) (stating that "to assert personal jurisdiction over the Austrian
Defendants in Texas, Baker Hughes must show that they did 'something more'
than receive and possess Baker Hughes's protected information.  That 'something
more' means conduct expressly aimed at Baker Hughes in Texas."); Wheel-
Source, Inc. v. Gullekson, No. 3:12-cv-1500-M, 2013 WL 944430, at *5–6 (N.D.
Tex. Mar. 12, 2013) (finding exercise of personal jurisdiction inappropriate where
"[t]he only alleged connections between Defendant's allegedly wrongful conduct
and Texas are that Defendant allegedly received confidential and trade secret
information sent from Texas, and that Defendant's conduct harmed or injured

---

[5] Similarly, Leal's declaration states that Ruhrpumpen S.A. was not aware of
Hageman's alleged ownership in the intellectual property until receiving the
August 1, 2014 letter from Hageman's attorney.  (Leal Decl. ¶ 11.)

Plaintiff, a Texas-based company."). Because Defendants have not presented any affirmative evidence rebutting Corporación EG's declarations, the Court finds that the meeting in Mexico is insufficient to confer personal jurisdiction.

As to the 2014 NDA signed between Corporación EG and Van Steenburg following the meeting in Mexico, Defendants again argue that because Corporación EG knew that the material presented at the meeting belonged to Veolectra, the 2014 NDA, which contemplates the exchange of trade secrets, represents an attempt to "hide the conspiracy and further the misappropriation of Veolectra's trade secrets." (Dkt. # 37 at 16.) Corporación EG disputes that the 2014 NDA contemplates the exchange of trade secrets (Dkt. # 42 at 14–15), and argues that Defendants cannot attempt to establish specific jurisdiction simply by claiming that they were harmed by a contract between Corporación EG and a Texas resident. (Dkt. # 35 at 26.)

Where a plaintiff asserts tort claims against a defendant while relying on the defendant's contractual dealings to establish specific jurisdiction, courts have recognized that the claims do not arise out of the contract and thus that the "minimum contacts standard applied to intentional tort cases is the governing standard, and not the contracts minimum contacts standard applied in breach of contract cases." See Corder v. BBG Commc'ns., Inc., No. W-11-CA-00264, 2012 WL 3843691, at *8 (W.D. Tex. July 30, 2012); Nocando, 2004 WL 2603739, at

*18.  Those courts reason that "[t]his is so because a defendant must reasonably anticipate that he could be haled into a Texas court because of his alleged conduct, and the mere performance of a contract, without more, would not ordinarily cause a defendant to reasonably anticipate being haled into court to answer for an alleged intentional tort against a third party."  Nocando, 2004 WL 2603739, at *18 (citing Burger King, 471 U.S. at 474).

As such, the relevant inquiry is again whether the consequences of Corporación EG's actions were seriously harmful and were intended or highly likely to follow from their conduct, whether their intentional actions were aimed at the forum state, and whether those actions had foreseeable effects in the forum.  Id. (citing Guidry, 188 F.3d at 628; Wein Air, 195 F.3d at 212).  For the same reasons stated above, the Court finds that Defendants have not presented a prima facie case that Corporación EG knew that "seriously harmful" consequences were intended or highly likely to result from the 2014 NDA, or that they directed specific acts with foreseeable effects towards Texas.  Thus, it would not be fair or reasonable to hale Corporación EG into court in Texas based on the 2014 NDA, and it cannot serve as the basis for personal jurisdiction.

### 3.    Consent to Jurisdiction

Last, Defendants argue that the forum selection clause in the 2014 NDA, which is governed by Texas law and requires binding arbitration in Dallas,

26

Texas (Dkt. # 37, Ex. 10 at 2–3), make it "eminently foreseeable to [Corporación EG] that it could be haled into Texas based on [the contract]." (Dkt. # 37 at 19.) In other words, Defendants argue that Corporación EG impliedly consented to jurisdiction in Texas when it entered into the 2014 NDA.[6] Corporación EG responds that the existence of a choice-of-law provision and/or a forum selection clause in a contract between the defendant and a resident of the forum is not evidence that the defendant reasonably anticipated being haled into the forum by the plaintiff, who was not a party to the contract. (Dkt. # 42 at 26.)

The Fifth Circuit has recognized that "in certain circumstances, an arbitration agreement may alter an otherwise decisive jurisdictional analysis by evidencing a nonresident's implied consent to personal jurisdiction." Freudensprung, 379 F.3d at 345 (citing PaineWebber Inc. v. Chase Manhattan Private Bank, 260 F.3d 453 (5th Cir. 2001)). However, the Fifth Circuit has also found this principle inapplicable where the arbitration agreement at issue does not contemplate arbitration between the plaintiff and the defendant. Id. The choice-of-law and arbitration provisions in the 2014 NDA show that Corporación EG expected to arbitrate issues with Van Steenburg in Texas, but "it does not concomitantly follow that [Corporación EG] reasonably anticipated being haled

---

[6] Defendants make the same argument regarding the 2013 NDA. (Dkt. # 37 at 19.) However, for the reasons explained above, that agreement does not bind Corporación EG.

into a Texas Court to defend a lawsuit brought by [Defendants] or any other nonparty to the [agreement.]" Id. Thus, the Court finds that the 2014 NDA does not show that Corporación EG impliedly consented to jurisdiction in Texas courts for the adjudication of this dispute. For the foregoing reasons, the Court concludes that it does not have specific personal jurisdiction over Corporación EG, and that Corporación EG's Rule 12(b)(2) Motion should be **GRANTED.**

II.   Service of Process

Last, Corporación EG argues that the Hague Convention is applicable in this case because Corporación EG is a Mexican company, and that Defendants' attempted service of process on Corporación EG via the Texas Secretary of State did not comply with the mandatory provisions of the Hague Convention. (Dkt. # 35 at 1.) Because this Court does not have personal jurisdiction over Corporación EG, Corporación EG's Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process is **MOOT.**

CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Corporación EG's Motion to Dismiss. (Dkt. # 35.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, March 31, 2015.

28

_____
David Alan Ezra
Senior United States District Judge